Filed 6/7/24  P. v. Chinn CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | G062459 |
| v. | (Super. Ct. No. 21WF2745) |
| KENNETH LAWRENCE CHINN, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Kathleen Roberts, Judge.  Reversed and remanded with directions.

Todd Spitzer, District Attorney, and Austin Deuel, Deputy District Attorney, for Plaintiff and Appellant.

The Law Office of Brian Gurwitz and Brian N. Gurwitz for Defendant and Respondent.

This is the second opinion we have written regarding the prosecution of defendant and respondent Kenneth Lawrence Chinn for sexually abusing his daughter Jane Doe. The case turns on the corpus delicti rule, a venerable canon of criminal law that is designed to ensure a defendant is not convicted of a crime to which he confessed but did not in fact occur. To that end, the rule requires the prosecution to prove – independently of the defendant's extrajudicial statements – the alleged crime actually took place. However, a slight or prima facie showing of the crime will suffice in that regard.

In our first opinion, we held the corpus delicti rule applies to preliminary hearings, and, apart from Chinn's admissions, there was insufficient evidence at his hearing to prove Doe had been molested. (*People v. Chinn* (June 22, 2020, G058094) [nonpub. opn.] (*Chinn I*).) We thus affirmed the trial court's decision to set aside the charges pursuant to Penal Code section 995.[1]

After the district attorney refiled the charges, a second preliminary hearing was held. At the hearing, the district attorney presented new evidence in the form of expert testimony to establish that Doe had in fact been sexually abused as a child. Nonetheless, the magistrate still dismissed the complaint for lack of direct evidence on that central issue.

The district attorney challenges that order in this appeal. He contends the preliminary hearing evidence was strong enough to satisfy the corpus delicti rule and bind Chinn over for trial. Chinn disagrees. He has also moved to dismiss the appeal on procedural grounds. We deny the motion and reverse the magistrate's dismissal order. Measured against the relaxed standard of proof required under the corpus delicti rule, the evidence at the preliminary hearing was sufficient to require Chinn to stand trial for sexually abusing his daughter.

---

[1] Unless noted otherwise, all further statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

*Chinn I*

On August 16, 2018, Chinn was charged in a felony complaint with three counts of lewd conduct for sexually abusing Doe when she was a child. (§ 288, subd. (a).) At the preliminary hearing, the sole witness was Police Detective Gloria Scott, who interviewed Doe in June 2018, when she was 24 years old. Doe reported she did not have any specific memories of Chinn molesting her as a child. However, she had been having disturbing flashbacks of being on a bed with Chinn when she was three or four years old and not being able to move her body. Doe also said that she had imagined Chinn was on top of her while she was having sex with her boyfriend recently.

As part of her investigation, Scott also interviewed Doe's stepmother Jennifer, as well as Chinn himself. Jennifer told Scott there was a period during Doe's childhood during which she appeared to be fixated on Chinn's penis. This prompted Jennifer to ask Chinn if he had ever sexually abused Doe, and he admitted he had. When Scott asked Chinn about this, he conceded it was true. He said he had molested Doe a couple of times when she was three or four years old by using her hand to masturbate himself.

The magistrate found there was sufficient evidence apart from Chinn's admissions to satisfy the corpus delicti rule and bind him over for trial. But on review under section 995, the trial court disagreed and set aside the charges.

The district attorney appealed, and after confirming the corpus delicti rule applies to preliminary hearings, we determined the evidence came up short in terms of satisfying the rule. (*Chinn I, supra*, G058094, at p. 23.) We therefore affirmed the trial court's set aside order. (*Id*. at p. 24.) In so doing, we also noted that, had the prosecution "presented expert testimony interpreting the import of [] Doe's conduct or experiences, our conclusion [] may well have been much different. [Citations.]" (*Id*. at p. 23.)

3

*The Present Case*

In October 2021, the district attorney refiled the charges in a three-count felony complaint. Before the preliminary hearing, Chinn moved to dismiss the complaint under section 1238, subdivision (b). He argued that because we had affirmed the trial court's set aside order in *Chinn I,* that ruling was binding in the case and precluded the filing of any new charges. The trial court disagreed and denied the motion to dismiss. Following the filing of an amended complaint that added new allegations relating to the statute of limitations, a second preliminary hearing was held in January 2023.

As she did at the first preliminary hearing, Detective Scott related the contents of the interviews she had with Doe, Jennifer and Chinn. The district attorney also presented testimony from Investigator Victoria Hurtado, who interviewed Doe in 2021. Based on Scott and Hurtado's testimony, the following facts emerged:

Doe was born in 1994. When she was just a few months old, her mother and Chinn split up, and Chinn ended up raising Doe on his own until he married Jennifer in 1999. After that, Chinn and Jennifer had two children of their own, and Chinn was not very involved in Doe's life. Consequently, Doe did not feel very close to Chinn while she was growing up, and even to this day she has few memories of him from that period in her life.

However, according to Jennifer, at one point when Doe was young, she appeared to be fixated on Chinn's penis. When Chinn got out the shower, Doe would often pull on his towel and try to see his penis. Doe's behavior was so worrisome to Jennifer that she asked Chinn if he had ever molested Doe. Chinn admitted he had, when Doe was about three or four years old. He said he had used Doe's hand to stroke his penis while they were lying in bed together. In response to this admission, Jennifer consulted her church elders, but they told her it was not grounds for divorce, so she stayed married to Chinn. But from that point on, she always kept a close eye on Doe and made sure other children did not come over to their house.

4

The issue did not resurface again until Doe was about 21 years old. By that time, Doe was living on her own and was largely estranged from Chinn due to their religious differences. One day as she was going through some old photographs, she came across a photo of herself wearing gray floral pajamas when she was about three or four years old. The photo triggered a "flashback memory" for Doe of when she was that age. Doe remembered lying on a bed with Chinn while she was wearing those same pajamas. There was a light coming from the corner of the room, and she was staring up at the popcorn ceiling. Although Chinn was not touching her and she could move her head freely, she could not move her body because it was "frozen."

This memory was troubling to Doe because it was the only one she had of her early childhood, and it kept recurring in her mind. However, she did not know whether it was a true memory of something that had actually happened or was just something that came to her as a result of seeing that old photograph. She had a feeling there was something important about the pajamas she was wearing in the photo, but she did not know what it was.

In addition to the flashback memory of being on a bed with Chinn, Doe had another disturbing experience shortly before her interview with Detective Scott in 2018. On that occasion, Doe was having sexual intercourse with her boyfriend when she "suddenly envisioned or imagined [Chinn] on top of her instead of her boyfriend." Doe believed this was only her imagination, not an actual memory. Nevertheless, the image of Chinn frightened Doe to tears, and she abruptly ended the intercourse.

When Chinn was interviewed by Scott, he told her he was a "very bad person" after he separated from Doe's mother. On about three or four occasions, after he had been drinking or doing drugs, he got into bed with Doe and used her hand to masturbate himself. Chinn said Doe was three or four years old at the time. At Scott's invitation, he wrote a letter to Doe apologizing for his behavior.

5

At the preliminary hearing, the prosecution also called Mandy Mount as an expert witness. Mount has a Ph.D. in psychology and holds certifications in sexual assault counseling and trauma treatment. Her specialty is the neurobiology of trauma, which examines the physiological impact of trauma and how people react to traumatic experiences such as child sexual abuse. In forming her opinions about the case, Mount relied on Doe's police interviews. She did not have any information as to whether Chinn had admitted any wrongdoing.

Mount testified trauma memories are stored nonverbally in the brain, which makes them harder to recall than other memories. She said this would explain why Doe's recollection of the bedroom scene with Chinn was vague in some respects. Mount also testified it is common for trauma victims to suffer tonic immobility, which is the inability to move due to feelings of intense fear or helplessness. Asked if Doe's memory of feeling "frozen" on the bed with Chinn was consistent with this condition, Mount answered "very much so." She further stated that Doe's apparent fixation with Chinn's penis when she was a child was a potential sign that she had been sexually abused.

Mount also addressed the fact that, other than the bed memory, Doe has no memories of her early childhood. According to Mount, this was "consistent with what we might see from somebody who had experienced dissociative amnesia, which is essentially memory loss that is related to a traumatic event[.]" Mount explained dissociative amnesia "functions in a protective manner to allow emotional and mental safety and to prevent further harm or symptomology." She said it is fairly prevalent among children who have suffered incestuous sexual abuse.

Speaking to the scare Doe had when Chinn's face suddenly appeared to her while she was having sex with her boyfriend, Mount testified "it is very common among survivors of sexual violence or abuse to have their memories resurface this way, particularly when dissociative amnesia is present." She said those memories can be so frightening and confusing that the victim is not even sure if they are real or not.

6

All things considered, Mount believed Doe's memories and experiences were consistent with someone who had been sexually abused as a child.

Despite Mount's testimony, the magistrate determined there was insufficient evidence to satisfy the corpus delicti rule and bind Chinn over for trial. The magistrate was particularly troubled by the fact that, other than Chinn's admissions, there was no direct evidence of any crime. In that regard, the magistrate found it significant that Doe did not have any memories of actually being molested. While Doe remembered being frozen on a bed with Chinn, and his face came to her while she was having sex with her boyfriend, that did not prove "any sexual molestation" or an "actual crime took place." And although Mount opined Doe's memories and experiences were consistent with being molested, "she did not say and cannot say [Doe] was molested." Therefore, the magistrate dismissed the complaint for lack of evidence to support the charges. The district attorney has appealed that order.

## DISCUSSION

As a threshold matter, Chinn has moved to dismiss the appeal on procedural grounds. He also renews his claim the case should have been dismissed before the preliminary hearing under section 1238, subdivision (b). For the reasons explained below, we conclude the case is properly before us, and the preliminary hearing produced sufficient evidence to bind Chinn over for trial.

### *Motion to Dismiss Appeal*

Chinn claims the magistrate's ruling constitutes a nonappealable order that can only be challenged by moving to reinstate the charges in the superior court. While Chin admits his claim runs counter to this court's decision in *People v. Rodriguez* (2013) 217 Cal.App.4th 326 (*Rodriguez*), he submits *Rodriguez* was wrongly decided and should be disapproved in light of an earlier case, *People v. Mimms* (1988) 204 Cal.App.3d 471 (*Mimms*). We disagree.

7

"'The prosecution's right to appeal in a criminal case is strictly limited by statute. [Citation.]' [Citations.] 'The circumstances allowing a People's appeal are enumerated in section 1238.' [Citation.] ""[C]ourts are precluded from so interpreting section 1238 as to expand the People's right of appeal into areas other than those clearly specified by the Legislature.'" [Citation.]'" (*People v. VonWahlde* (2016) 3 Cal.App.5th 1187, 1193.)

In this case, the magistrate dismissed the charges pursuant to section 871, after finding there was insufficient evidence to bind Chinn over for trial. The district attorney has invoked section 1238, subdivision (a)(8) as the basis for appealing that order. That provision authorizes the People to appeal from an order "dismissing or otherwise terminating all or any portion of the action[.]" (§ 1238, subd. (a)(8).) Chinn does not address whether the magistrate's dismissal order comes within the terms of that provision. Instead, he contends the district attorney's sole remedy for challenging the order is set forth in section 871.5.

Section 871.5 provides that when an action is dismissed by a magistrate pursuant to specified code sections, including section 871, "the prosecutor may make a motion in the superior court within 15 days to compel the magistrate to reinstate the complaint or a portion thereof . . . ." (§ 871.5, subd. (a).) The statute does not specify whether a motion for reinstatement is the People's exclusive means for challenging a magistrate's dismissal order. However, relying on *Mimms*, Chinn asserts that it is, and therefore the People's appeal should be dismissed.

*Mimms* was decided a decade before trial court unification was authorized by constitutional amendment in 1998. (See generally Trial Court Unification: Revision of Codes (July 1998) 28 Cal. Law Revision Com. Rep. (1998) p. 59 [explaining the legal basis for the unification process] (hereafter Law Revision Report).) In that case, the magistrate dismissed a felony complaint prior to the preliminary hearing on the basis the charges were time-barred. (*Mimms, supra,* 204 Cal.App.3d at p. 473.) On review to the

8

appellate department of the superior court, the order was reversed, and that prompted the defendants to appeal to the Court of Appeal. (*Id.* at p. 474.) As framed by the *Mimms* court, the precise issue to be decided was "whether the appellate department of the superior court ha[d] jurisdiction to hear [the] People's appeal of [the] magistrate's order of dismissal under section 1466." (*Ibid.*)

At that time, section 1466 authorized the prosecution to appeal a dismissal order that was issued by an "'inferior court, in a criminal case, to the superior court of the county in which such inferior court is located.'" (*Mimms, supra*, 204 Cal.App.3d at p. 473 fn. 2.) Section 1466 did not draw any distinction between felony cases and misdemeanor cases, nor did it define what an inferior court was. Yet, it was generally understood that magistrates were not inferior courts for purposes of the statute. (*Id.* at pp. 474-480.) That left the People without a means to challenge a magistrate's dismissal order in many felony cases. (*Ibid.*)

In response to that dilemma, the Legislature enacted section 871.5 to allow the prosecution to contest the dismissal of a criminal complaint by a magistrate. (*Mimms, supra,* 204 Cal.App.3d at p. 478-479.) Although *Mimms* quoted Supreme Court authority characterizing section 871.5 as "'*a means* by which the district attorney'" could challenge a magistrate's dismissal order (*id.* at p. 479, italics added, quoting *Landrum v. Superior Court* (1981) 30 Cal.3d 1, 6, fn. 4), *Mimms* interpreted section 871.5 as the "*exclusive method* by which the People may" do so. (*Mimms, supra,* 204 Cal.App.3d at p. 481, italics added.) *Mimms* reasoned that limitation was justified due to "the confusion apparent in using section 1466 to review a magistrate's order of dismissal" and because the delay occasioned by an appeal would be "detrimental to both the People and the defense." (*Ibid.*) It therefore concluded the appellate department of the superior court lacked jurisdiction to entertain the People's appeal of the magistrate's dismissal order in that case. (*Ibid.*)

9

However, in the wake of *Mimms*, the statutes governing criminal appeals were overhauled to accommodate the unification of the municipal and superior courts, which began in 1998. That year, section 1466 was amended to allow the People to appeal a dismissal order in any "infraction or misdemeanor case" to the appellate department of the superior court. (§ 1466, subd. (a)(2), enacted as part of Stats. 1998, ch. 931 (S.B. 2139), § 424.) By specifying the types of cases to which it applies, and omitting any reference to "inferior court," the amended version of section 1466 marked a significant departure from how the statute was worded at the time *Mimms* was decided.

As part of the same bill, the Legislature amended section 1235 to clarify the scope of the Court of Appeal's jurisdiction. (Stats. 1998, ch. 931 (S.B. 2139), § 397.) Prior to that time, section 1235 limited appellate court jurisdiction to cases arising from the superior court. (See *People v. Welch* (1971) 20 Cal.App.3d 997, 1000, fn. 6.) But, as a consequence of the 1998 amendments to the statute, appellate courts now have jurisdiction over any felony case.[2] This change was intended to permit appellate court review "regardless of whether the appeal is from the superior court, the municipal court, *or the action of a magistrate*. [Citation.]" (Law Revision Report, *supra*, at p. 455, italics added.)

The 1998 amendments to sections 1235 and 1466 were pivotal to our decision in *Rodriguez* in 2013. The issue there was whether the prosecution could appeal a magistrate's dismissal order that was issued pursuant to section 1387.[3] (*Rodriguez, supra*, 217 Cal.App.4th at p. 332.) Relying on *Mimms*, the defendant argued the appeal was improper because the prosecution's sole remedy was to file a motion for reinstatement in the trial court under section 871.5. (*Ibid*.) However, we agreed with the

---

[2]     Section 1235 provides: "(a) Either party to a felony case may appeal on questions of law alone, as prescribed in this title and in rules adopted by the Judicial Council. . . . [¶] (b) An appeal from the judgment *or appealable order* in a felony case is to the court of appeal for the district in which the court from which the appeal is taken is located." (Italics added.)

[3]     That statute generally bars prosecution of a felony if there have been two prior dismissals.

10

district attorney that *Mimms* was eclipsed by the 1998 amendments to sections 1235 and 1466.

While the earlier versions of those statutes made appealability dependent on which court issued the order in question, the 1998 amendments made clear appealability is now determined by the nature of the underlying case: "'If the order occurred in "an infraction or misdemeanor case," the proper appeal is to the appellate division of the superior court [under section 1466]. If the order occurred in a "felony case," the proper appeal is to the Court of Appeal,'" pursuant to section 1235. (*Rodriguez, supra*, 217 Cal.App.4th at p. 332.) Since the dismissal order in *Rodriguez* targeted felony offenses, we ruled the prosecution's failure to file a section 871.5 motion for reinstatement was not a bar to appellate court review. (*Ibid*.)

Although that ruling has never been questioned in any published opinion, Chinn asks us to disapprove of it for a variety of reasons. First, contrary to what we held in *Rodriguez*, Chinn maintains reunification was actually designed to preserve the existing procedural rule enunciated in *Mimms*, not eliminate it. It is true that the statutory changes accompanying unification were generally intended to maintain existing rights and procedures. (Law Revision Report, *supra*, at p. 60.) However, it was also understood that "the existing substantive and procedural distinctions between traditional superior court cases [and] traditional municipal court cases . . . deserve[d] reexamination in light of unification." (*Id*. at p. 61, fn. omitted.) As a matter of fact, one of the intended purposes of unification was to "allow for [the] statutory expansion of court of appeal jurisdiction." (*Id*. at p. 73.)

As shown above, that expansion was accomplished through the 1998 amendments to section 1466, the statute at the center of the *Mimms* decision, and section 1235, the statute governing appellate court jurisdiction. The historical record is clear that those amendments were intended to ensure that "[a]ppeals in misdemeanor and infraction cases lie to the appellate division of the superior court[,]" and "[a]ppeals in felony cases

11

lie to the court of appeal, *regardless of whether the appeal is from the superior court, the municipal court, or the action of a magistrate.* [Citation.]" (Law Revision Report, *supra*, at pp. 480 & 455, italics added.) Our decision in *Rodriguez* comports with this intent; appellant's argument would eviscerate it.

Chinn further argues that the policy considerations discussed in *Mimms* undermine the logic of *Rodriguez*, but we do not see it that way. One of the reasons *Mimms* decided a motion for reinstatement was preferrable to an appeal was that section 1466 was then unclear as to whether a magistrate's dismissal order was appealable under that section. (*Mimms, supra*, 204 Cal.App.3d at p. 481.) However, as discussed above, that issue was clarified by the statutory amendments that occurred after *Mimms*, which plainly allow for appellate review of a magistrate's dismissal order. And although it generally takes longer to challenge such an order by way of appeal than by way of a section 871.5 motion, that section grants the prosecution the right to appeal if the motion fails. (§ 871.5, subd. (f).) So the prospect of delay occasioned by appellate court review is not eliminated by adherence to the *Mimms* rule.

Chinn also contends the *Mimms* rule should be preserved because it prevents forum shopping and ensures parity between the rights of the prosecution and the rights of the defense. Those are legitimate concerns. The practical effect of the *Rodriguez* decision is that prosecutors have a choice following a magistrate's dismissal order; they can either appeal or seek reinstatement under section 871.5. But when the defendant is bound over for trial, he must file a section 995 motion in the superior court before pursuing appellate review. (*In re Berry* (1955) 43 Cal.2d 838, 844.)

Nonetheless, appellate review is ultimately available to both sides under this procedural framework. We do not believe the differences in the procedures for obtaining such review justify departing from our holding in *Rodriguez* and contradicting the expressed intent of the 1998 amendments. (See *People v. Williams* (2005) 35 Cal.4th 817, 823 [noting the rules respecting appellate review can sometimes leave a party

12

without a remedy to challenge a perceived wrong]; *Reed v. Hopper* (Ga. 1975) 219 S.E.2d 409 [upholding an appellate procedure that required the defendant, but not the People, to obtain a certificate of probable cause before appealing]; 16B C.J.S. (Aug. 2023 update) Constitutional Law, § 1407 [equal protection does not require uniformity of appellate procedure as between the parties].) Therefore, we stand by our decision in *Rodriguez* and decline Chinn's invitation to disavow it.

Irrespective of *Mimms*, Chinn asserts the district attorney's appeal is barred by another decision, *People v. Nickerson* (2005) 128 Cal.App.4th 33 (*Nickerson*).[4] Indeed, Chinn maintains *Nickerson* "makes clear that there is no statutory basis to appeal – in *any* court – from a magistrate's dismissal of a felony complaint." Once again, we disagree.

*Nickerson* was a jurisdiction case. It examined whether the Court of Appeal had the authority to review a magistrate's order reducing a felony charge to a misdemeanor under section 17, subdivision (b). (*Nickerson, supra*, 128 Cal.App.4th at pp. 36-39.) Because the order transformed the charge to a misdemeanor for all purposes, *Nickerson* answered that question in the negative and transferred the appeal to the appellate division of the superior court. (*Id*. at pp. 39-41.)

Our case is different, of course, because the magistrate dismissed the felony charges against Chinn altogether, she did not reduce them to misdemeanors which are traditionally within the purview of the appellate department. Still, Chinn argues the reasoning of *Nickerson* compels a dismissal of the prosecution's appeal.

*Nickerson* began its analysis by recognizing the Court of Appeal has jurisdiction over felony cases, and the appellate division of the superior court has jurisdiction over misdemeanors. (*Nickerson, supra*, 128 Cal.App.4th at p. 36, citing

---

[4] We ordered and have received supplemental briefing from the parties on the possible effect of *Nickerson* on this appeal.

13

§§ 1235, subd. (a), 1466, Cal. Const., art. VI, § 11.)  For the definition of a felony case, *Nickerson* then looked to section 691, which states a felony case is "'a criminal action in which a felony *is charged* . . . .'"  (*Ibid.*, quoting § 691, subd. (f).)  Based on its reading of *Serna v. Superior Court* (1985) 40 Cal.3d 239 (*Serna*) and section 949, *Nickerson* determined a felony is not "charged" under section 691 "until an information or indictment is filed or a complaint is certified to the superior court pursuant to section 859a [after a guilty plea is taken by the magistrate].  [Citation.]"  (*Nickerson, supra*, 128 Cal.App.4th at p. 38.)  Because none of those events occurred in *Nickerson*, the court ruled it lacked jurisdiction to hear the People's appeal.  (*Ibid.*)

Chinn maintains the same result should follow here.  However, contrary to what *Nickerson* decided, we do not believe *Serna* and section 949 compel that conclusion.

In *Serna*, our Supreme Court examined whether a misdemeanor complaint is a formal accusation for purposes of triggering the right to a speedy trial under the Sixth Amendment.  In finding it is, the court relied on a jurisdictional distinction between misdemeanor and felony complaints that existed before the days of trial court unification.  Because a misdemeanor complaint was deemed to be a formal charge that immediately conferred jurisdiction on the court, *Serna* found it was sufficient to trigger the right to a speedy trial.  (*Serna, supra,* 40 Cal.3d at p. 257.)  However, because a felony complaint was considered a preliminary accusation that did not confer jurisdiction until the defendant was bound over for trial, it did not trigger that right.  (*Ibid.*)

Although *Serna* was decided before trial court unification occurred and concerned itself with a narrow Sixth Amendment issue, *Nickerson* interpreted it as having broader application to the issue of appellate court jurisdiction in the post-unification era.  However, as we explained above, the statutory landscape surrounding the issue of jurisdiction was altered significantly at the turn of the century to accommodate the

14

unification of the municipal and superior courts. Like *Mimms*, *Serna* must be read with that in mind.

It is also important to keep in mind that *Serna*'s distinction between felony and misdemeanor complaints focused on the issue of trial court jurisdiction, not appellate jurisdiction. *Nickerson* did not address this point. Working on the assumption that appellate court jurisdiction is dependent on superior court jurisdiction, *Nickerson* ruled the jurisdiction of the Court of Appeal would not be invoked by the filing of a felony complaint because, under *Serna*, a felony complaint is insufficient, in itself, to invoke the jurisdiction of the superior court. (*Nickerson, supra*, 128 Cal.App.4th at pp. 37-38.)

But our jurisdiction is not derived from the superior court. (*People v. Williams, supra,* 35 Cal.4th at p. 824.) It attaches whenever a felony is charged. And is a matter decided independent of whether the superior court has yet become involved. (*Ibid*.) Thus, we do not read *Serna* as foreclosing the district attorney's appeal.

Nor does section 949. Under that section, "The first pleading on the part of the people in the superior court in a felony case is the indictment, information, or the complaint in any case certified to the superior court under Section 859a." (§ 949.) However, this statute simply describes when a felony case is formally pled in the superior court. The fact that none of the events listed in section 949 occurred in Chinn's case does not mean he had never been charged with a felony for purposes of invoking the jurisdiction of this court.

We therefore reject the reasoning of *Nickerson* and adhere to our prior opinion in *Rodriguez*. Under *Rodriguez* and sections 1235 and 1238, subdivision (a)(8), the prosecution's appeal to this court is proper as arising from an appealable order in a felony case. We thus deny Chinn's motion to dismiss the appeal.

*Dismissal Under Section 1238, subdivision (b)*

As noted above, Chinn moved to dismiss the complaint before the second preliminary hearing. He argued dismissal was mandated under section 1238, subdivision

15

(b) because our decision in *Chinn I* conclusively resolved the matter and precluded refiling. Chinn tenders the same argument now, but as the district attorney correctly points out, the argument is foreclosed because the order denying Chinn's dismissal motion is not part of this appeal.

That order was made by Judge Kevin J. Haskins on June 17, 2022, several months before the preliminary hearing. Chinn did not seek review of that order, nor is the order part of the district attorney's appeal. In fact, the district attorney's notice of appeal makes clear his appeal was taken from the dismissal order that was issued by the magistrate at the preliminary hearing on January 31, 2023. Because our jurisdiction is limited to the scope of the notice of appeal and the order appealed from, we have no jurisdiction over the order denying Chinn's motion to dismiss. (*D.S. v. Superior Court* (2023) 88 Cal.App.5th 383, 387; *Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170.) Therefore, we cannot entertain Chinn's challenge to that order.

*Sufficiency of the Evidence*

Turning to the merits, the district attorney contends there is sufficient evidence to hold Chinn over for trial on charges that he sexually abused Doe. We agree.

The purpose of a preliminary hearing is to establish whether there is probable cause to believe the defendant has committed a felony. (§ 866, subd. (b).) To meet that standard, the prosecution's proof need not rise to the level to support a criminal conviction, or even establish guilt by a preponderance of the evidence. (*People v. Scully* (2021) 11 Cal.5th 542, 582; *People v. Hurtado* (2002) 28 Cal.4th 1179, 1189.) Rather, the evidence must simply be strong enough to lead a reasonable person to entertain a strong suspicion of guilt. (*Rideout v. Superior Court* (1967) 67 Cal.2d 471, 474.) This is an exceedingly low standard of proof. (*People v. Abelino* (2021) 62 Cal.App.5th 563, 573.)

So is the standard of proof required to satisfy the corpus delicti rule. To guard against the possibility of a false confession, the rule requires the prosecution to

16

prove the charged crimes independently of the defendant's extrajudicial statements. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1169.)  Nonetheless, "the quantum of evidence required is not great, and 'need only be "a slight or prima facie showing" permitting an inference of injury, loss, or harm from a criminal agency . . . .' [Citation.] 'The inference [that a crime has been committed] need not be "the only, or even the most compelling, one . . . [but only] a *reasonable* one."' [Citation.]" (*People v. Ledesma* (2006) 39 Cal.4th 641, 722.)  In other words, the proof necessary to establish the corpus delicti of an offense will be deemed sufficient so long as "it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible.  [Citations.]" (*People v. Alvarez, supra,* 27 Cal.4th at p. 1171.)

It is also well established that expert testimony may be used to satisfy the corpus delicti rule in sex crime cases.  For example, in *People v. Robbins* (1988) 45 Cal.3d 867, there was no direct evidence apart from the defendant's confession to support the allegation that he sexually abused the victim before killing him.  However, our Supreme Court determined the corpus delicti rule was satisfied based on circumstantial evidence, including expert testimony that the defendant was a pedophile.  (*Id*. at p. 886.)

Expert testimony was also used to satisfy the corpus delicti rule in *People v. Culton* (1992) 11 Cal.App.4th 363.  In that case, the victim's physical symptoms were such that they could have been caused by either sexual abuse or noncriminal forces. Absent direct evidence on the issue, the prosecution relied on an expert witness who testified to the significance of the symptoms and ultimately opined they were consistent with the victim having been sexual abused.  Independent of the defendant's statements, the court found this "was sufficient evidence to raise reasonable inferences of the corpus delicti of the" charged sex offenses.  (*Id*. at p. 372.)

Likewise, here, expert witness Mount testified to the significance of Doe's symptoms, i.e., her memories and experiences, and offered her opinion that those symptoms were consistent with Doe having been sexually abused.  Although there were

other, noncriminal explanations for Doe's symptoms, Mount's testimony was sufficient to raise a reasonable inference that Doe had been abused.

In arguing otherwise, Chinn claims Mount's testimony constituted improper "CSAAS testimony" and lacked proper foundation. CSAAS, which stands for Child Sexual Abuse Accommodation Syndrome, is a theoretical paradigm used to explain behavior that is typically associated with child sex abuse but might seem counterintuitive, such as delayed reporting by the victim. (*People v. Lapenias* (2021) 67 Cal.App.5th 162, 171.) Although expert testimony on CSAAS may not be used to prove the victim was molested, it can be used to show her conduct and reactions are consistent with someone who has been sexually abused. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300; CALCRIM No. 1193.)

During her testimony, Mount did not mention CSAAS by name, nor did she offer any opinion as to whether Doe had been molested. Rather, she simply testified that Doe's memories and experiences were consistent with having been sexually abused as a child. This did not amount to improper CSAAS evidence or overstep the bounds of permissible expert testimony.

As for Chinn's foundational arguments, he submits Mount's testimony lacked probative value because she did not know the exact manner in which Doe was allegedly molested. Relying on the "*Kelly/Frye*" rule,[5] he also complains "the prosecution presented no evidence showing that an expert can *reliably* opine on the manner in which child sexual abuse affects a child's memory and behavior some two decades later." But because Chinn did not raise these objections at the preliminary hearing, they have been forfeited. (Evid. Code, § 353 [to preserve an evidentiary issue for appellate review, the party's objection must be both timely *and* specific].)

---

[5]    Chinn's reference to *People v. Kelly* (1976) 17 Cal.3d 24 and *Frye v. United States* (D.C. Cir. 1923) 293 F. 1013 is a bit outdated because *Frye* has been superseded by changes to the Federal Rules of Evidence. (*People v. Nieves* (2021) 11 Cal.5th 404, 442, fn. 8 [noting the old *Kelly/Frye* rule is now known simply as the *Kelly* rule].)

In any event, we do not believe Chinn's foundational objections are well taken. The fact Mount did not know the precise manner in which Doe was allegedly molested, and she was asked to give her opinions about Doe's memories and experiences long after the alleged molestation occurred, goes to the weight, not the admissibility of her opinions. (See *People v. Eubanks* (2011) 53 Cal.4th 110, 140.) Chinn has failed to convince us Mount's testimony was so unreliable as to render her opinions unworthy of belief.

All told, there was sufficient evidence at the preliminary hearing to satisfy the rule and bind Chinn over for trial. Therefore, we conclude the magistrate erred in dismissing the charges against him.

DISPOSITION

The magistrate's dismissal order is reversed, and the matter is remanded for the magistrate to enter a new order holding Chinn to answer on all of the charges.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.

19